AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Gray Apple iPhone<br>Model: 15 Pro Max<br>Seized as FP& F: 2025255100006901 Item: 0002 | Case No. 25MJ8284 |

**FILED**
Apr 10 2025
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   s/ VeronicaCota   DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Fernando Quiroz*
Applicant's signature

Border Patrol Agent Fernando Quiroz
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: 04/09/2025

Judge's signature

City and state: El Centro, California     HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
Printed name and title

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**   Gray Apple iPhone
Model: 15 Pro Max
Seized as FP& F: 2025255100006901 Item: 002
Seized from Yesenia Lopez CARDENAS
**(Target Device #1)**

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-2 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of March 9, 2025, up to and including April 9, 2025, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**    Gray Apple iPhone
Model: 15 Pro Max
Seized as FP& F: 2025255100006901 Item: 002
Seized from Yesenia Lopez CARDENAS
**(Target Device #1)**

**A-2:**    Purple Apple iPhone
Model: 12
Seized as FP& F: 2025255100006901 Item: 003
Seized from Ashley MENDEZ-Lopez
**(Target Device #2)**

as further described in Attachments A-1 and A-2, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Yesenia Lopez CARDENAS (CARDENAS) and Ashley MENDEZ-Lopez (MENDEZ), for transportation of minor illegal aliens E.M.A and R.M.A., (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from CARDENAS and MENDEZ on or about April 8, 2025, incident to the arrest of CARDENAS and MENDEZ. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.     Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents.  Dates and times are approximate.

## EXPERIENCE AND TRAINING

4.     I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8,18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5.     I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain

communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law

enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

10. On April 8, 2025, United States Border Patrol Agent (BPA) C. Casillas was assigned to the Indio Border Patrol Station's operational Highway 86 Checkpoint. At approximately 3:50 a.m., a silver Ford Explorer bearing Baja California license plates approached the primary inspection area and stopped as directed by BPA Casillas. BPA Casillas identified himself as a United States BPA to the driver, later identified as Yesenia

1  CARDENAS-Lopez (CARDENAS), and questioned CARDENAS as to her citizenship in
2  English. CARDENAS claimed to be a U.S. citizen. BPA Casillas noticed an adult female
3  passenger in the front seat, later identified as Ashley MENDEZ-Lopez (MENDEZ), and
4  two minor females asleep in the back seat. CARDENAS handed BPA Casillas four Arizona
5  Identification Cards (IDs) and stated that she was travelling from Arizona to Indio,
6  California with her three daughters.

7  11.  When asked about her trip to Indio, CARDENAS stated that they were
8  visiting family for two days. From primary inspection, BPA Casillas noticed that
9  CARDENAS, MENDEZ and the minors were not travelling with any luggage. BPA
10 Casillas also noted the vehicle had Baja California plates and questioned CARDENAS
11 regarding the vehicle. CARDENAS stated the vehicle belonged to her dad and she was
12 borrowing it because her vehicle broke down. Agent Casillas asked CARDENAS if she
13 had recently crossed through the Port of Entry, to which she stated: "Yes." CARDENAS
14 stated she crossed through the San Luis Port of Entry because her kids were with their
15 dad. This seemed to contradict her original statement about the trip and, due to the
16 discrepancies in her story, BPA Casillas asked CARDENAS for consent to search the
17 vehicle, to which CARDENAS agreed without hesitation.

18 12.  In secondary inspection, MENDEZ claimed the two little girls were her
19 sisters. BPAs compared the IDs with CARDENAS, MENDEZ and the minors. BPA
20 Rodriguez approached BPA Casillas and indicated he believed the minors were imposters
21 to the IDs bearing the names E.M.L. and T.M.L. BPA Casillas compared the photos on
22 the IDs to the minor's faces and agreed they did not match. BPA Casillas then proceeded
23 to question the younger child away from everyone. After questioning, the minor child
24 confirmed her real name was E.M.A. and her sister's name was R.M.A. At this time, BPAs
25 believed the two minor female children transported by CARDENAS and MENDEZ were
26 imposters to the IDs, were not MENDEZ's sisters as she previously stated, and were being
27 smuggled by CARDENAS and MENDEZ. Supervisory BPA J. Palomo was able to
28 confirm that E.M.A and R.M.A. were, in fact, sisters born in Mexico and present in the

United States without any proper immigration documents to be in or remain in the United States. CARDENAS and MENDEZ were placed under arrest at this time. During a post-Miranda statement, CARDENAS was questioned as to whether she knew the girls' parent and she stated she did not. She was asked where she was taking the girls and she admitted she was taking them to Indio, California.

13. During a search incident to arrest of CARDENAS, MENDEZ and the material witness two cellphones were found. A gray cellphone (Target Device #1) was located in the center console of the vehicle by BPA D. Alonso. CARDENAS claimed ownership of the cellphone. A purple cellphone (Target Device #2) was found on MENDEZ'S person by BPA D. Alonso. MENDEZ claimed ownership of the cellphone. Two cellphones were claimed by their respective owners and seized as evidence

14. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on March 9, 2025, up to and including April 9, 2025, the day after the arrest of CARDENAS and MENDEZ.

## METHODOLOGY

15. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all

6

the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

16. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//
//
//
//
//
//

## CONCLUSION

18. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that CARDENAS and MENDEZ used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by CARDENAS, MENDEZ and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Fernando Quiroz*
FERNANDO QUIROZ
BORDER PATROL AGENT

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 9th day of April, 2025.

_____ 12:16 p.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

8

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**   Gray Apple iPhone
Model: 15 Pro Max
Seized as FP& F: 2025255100006901 Item: 002
Seized from Yesenia Lopez CARDENAS
**(Target Device #1)**

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

<u>**A-2:**</u>   Purple Apple iPhone
    Model:  12
    Seized as FP& F: 2025255100006901 Item: 003
    Seized from Ashley MENDEZ-Lopez
    **(Target Device #2)**


The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-2 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of March 9, 2025, up to and including April 9, 2025, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.